NO. 22-1929

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

DARBY DEVELOPMENT COMPANY, INC., *et al.,*

Plaintiffs-Appellants

v.

UNITED STATES,

Defendant-Appellee

Appeal from May 17, 2022, Opinion and Judgment of the
United States Court of Federal Claims, Case No. 21-1621
Judge Armando O. Bonilla

**CORRECTED RESPONSE TO PETITION FOR REHEARING EN BANC**

Creighton R. Magid
DORSEY & WHITNEY LLP
1401 New York Avenue, N.W.
Suite 900
Washington, D.C.  20005
Telephone:  (202) 442-3555
Email:  magid.chip@dorsey.com

DATE:  April 11, 2025

## CERTIFICATE OF INTEREST

As required by Federal Circuit Rule 47.4, the undersigned counsel certifies the following:

1. **Represented Entities**. Provide the full names of all parties represented by undersigned counsel in this case.

DARBY DEVELOPMENT COMPANY, INC.

MCLEAN INVESTMENTS, LLC

SHANDER INTERNATIONAL, LLC

104WWB, LLC

MICHAEL RAK

MOHAMMAD ZAMANIAN

REGINA TILLMAN

RICHARD AND JOANNE PANEK

INTERCOASTAL YACHT CLUB, LLC

R. JAMES PROPERTIES, INC.

CAPITAL CITY INTERIOR LLC

VERITAS EQUITY MANAGEMENT, L.L.C.

AZURE PARK APARTMENTS, LLC

BAY BRIDGE PROPERTIES LLC

BELLA ESTATES NEVADA, LLC.

CASAS ADOBES PARTNERS V L.L.C.

DECATUR POINT LLC

ENCANTADA APARTMENTS, LLC

GRAND CHANNEL, LLC

HESPERIAN FALLS PARTNERS LLC

LAKE CHARLOTTE, LLC

LAS VEGAS CAMERON APTS LLC

LOGAN VENTURES OF CALIFORNIA PROPERTIES LLC

PARADISE SQUARE, LLC.

REDWOOD GARDEN PROPERTIES, LLC

RIDGE FALLS APARTMENTS, LLC

RIVERBEND VILLAGE PARTNERS LLC

SUNSET TERRACE PARTNERS LLC

TSV CROSSROADS AT ROCHELLE LLC

VILLA MONTEREY PROPERTIES, LLC

VILLA EAST PROPERTIES, LLC

ORION PROPERTIES OF WEST PALM BEACH, LLC

BELHAVEN RESIDENTIAL, LLC

GWR BH HOLDINGS, LTD.

GWR EQUITIES LLC

GWR TEXAS SE PARTNERS, LTD.

GWR TRAILS PARTNERS, LTD.

GG ICON LLC

**2.** **Real Party in Interest**.  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

NONE/NOT APPLICABLE.

**3.** **Parent Corporations and Stockholders.**  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

NONE/NOT APPLICABLE.

**4.** **Legal Representatives**.  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.

John McDermott
JOHN MCDERMOTT, PLLC
4300 Wilson Blvd, Suite 400
Arlington, VA  22203
Telephone:  (703) 518-6141
jmcdermott@naahq.org

**5.** **Related Cases**.  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be

directly affected by this court's decision in the pending appeal. Do not include the originating case number(s).

NONE/NOT APPLICABLE.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

NONE/NOT APPLICABLE.

Dated: April 11, 2025

/s/ Creighton R. Magid
Creighton R. Magid
DORSEY & WHITNEY LLP
1401 New York Avenue, N.W.
Suite 900
Washington, D.C. 20005
Telephone: (202) 442-3555
Fax: (202) 315-3852
magid.chip@dorsey.com

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................... ii

INTRODUCTION ..............................................................................1

ARGUMENT ..................................................................................3

I.    THE PETITION DOES NOT ESTABLISH A BASIS FOR EN BANC
      REHEARING. ...........................................................................3

II.   THE CDC ORDER WAS AUTHORIZED WITHIN THE MEANING OF
      WELL-ESTABLISHED TAKINGS LAW. ..................................................4

III.  THE MORATORIUM WAS A PER SE PHYSICAL TAKING....................9

CONCLUSION ...............................................................................14

CERTIFICATE OF COMPLIANCE....................................................16

CERTIFICATE OF SERVICE .............................................................17

# <u>TABLE OF AUTHORITIES</u>

Page

## Cases

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020
  (Fed. Cir. 2015) ......................................................................3

*Ala. Ass'n of Realtors v. U.S. Dept. of Health & Hum. Servs.*, No.
  1:20-cv-03377 (D.D.C. Dec. 21, 2020) ..................................3

*Alabama Ass'n of Realtors v. U.S. Dept. of Health & Hum. Servs.*,
  594 U.S. 758 (2021) ............................................... 1, 10, 13, 14

*Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021) ................. 1, 9, 10, 11, 12, 14

*Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358
  (Fed. Cir. 1998) ......................................... 1, 2, 4, 6, 7, 8, 9

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223
  (Fed. Cir. 2015) ......................................................................3

*Eyherabide v. United States*, 345 F.2d 565 (Ct. Cl. 1965) ....................................5, 6

*Great Falls Mfg. Co. v. Attorney General*, 124 U.S. 581 (1888) ..................... 1, 5, 9

*Loretto v. Teleprompter Manhattan CATV Corp.*, 485 U.S. 419 (1982)..................9

*Ramirez de Arellano v. Weinberger*, 724 F.2d 143 (D.C. Cir. 1983),
  *rev'd on other grounds*, 745 F.2d 150 (D.C. Cir. 1984) (en banc),
  *vacated on other grounds*, 471 U.S. 1113 (1985)...................................4

*Sheetz v. County of El Dorado*, 601 U.S. 267 (2024)...................................... 10, 14

*Suprema, Inc. v. Int'l Trade Comm'n*, 796 F.3d 1338 (Fed. Cir. 2015)....................3

*Yee v. City of Escondido*, 503 U.S. 519 (1992) ................................................. 11, 12

## Statutes

42 U.S.C. § 264(a) ............................................................................ 1, 7, 8

ii

**Other Authorities**

"Temporary Halt in Residential Evictions to Prevent Further Spread of COVID-19," 85 Fed. Reg. 55,292 (Sept. 4, 2020) ............................................................7

**Rules**

Fed. Cir. R. 40(a)(1) ................................................................................3

Fed. R. App. P. 40(c) ...............................................................................3

**Constitutional Provisions**

Fifth Amendment ......................................................................................1

## **INTRODUCTION**

In a detailed and thorough opinion, a panel of this Court followed well-established Supreme Court and Federal Circuit precedent in holding that owners of rental properties properly stated a claim for a compensable taking under the Fifth Amendment's Takings Clause based on the Government's year-long moratorium – a moratorium based on a presidential directive and pursuant to statutory authority – that prevented the owners from evicting non-rent-paying persons from their premises. Seeking a different outcome, the Government attempts to make a case for en banc review by claiming that the majority opinion "upends a century of precedent." To the contrary, the panel opinion fits squarely within long-established precedent. Indeed, it is the *Government* that seeks to overrule this Circuit's holding in *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358 (Fed. Cir. 1998), and to disregard applicable Supreme Court precedent including *Great Falls Mfg. Co. v. Attorney General*, 124 U.S. 581 (1888), *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021), and *Alabama Ass'n of Realtors v. U.S. Dept. of Health & Hum. Servs.*, 594 U.S. 758 (2021) (per curiam).

The CDC issued its eviction moratorium based on a presidential directive and under a statute enacted by Congress that gave the CDC expansive authority to issue such regulations "as in [its] judgment" are necessary to prevent the interstate spread of communicable diseases. *See* 42 U.S.C. § 264(a). It did so after a considered,

1

good faith determination that the CDC Order was a proper exercise of its statutorily authorized powers, and necessary to protect the public health. Two presidential administrations championed the moratorium. Congress specifically extended the moratorium; far from questioning or rejecting the CDC's authority, Congress instead acknowledged the statutory basis for the CDC Order by extending the moratorium. When the CDC's ability to impose the moratorium was questioned, the Government argued strenuously (and successfully) in courts across the country that the CDC Order was fully authorized by statute and could not be enjoined.

It matters not that the Supreme Court ultimately expressed the view that the moratorium exceeded the CDC's statutory authority; as the majority here correctly noted, under long-standing precedent, "[i]nstead of asking merely whether the action was legally authorized, the takings-law inquiry asks 'whether the alleged invasion of property rights is *chargeable to the government*." Opinion at 10 (emphasis in original) (quoting *Del-Rio*, 146 F.3d at 1362). "The focus is on whether the government should be held liable for its agents' actions." *Id*. There can be no doubt under the circumstances here – an action taken pursuant to two presidential directives and a congressional extension, under a good faith belief that the action was statutorily authorized, and with the Government's repeated insistence that the CDC "acted within its statutory and regulatory authority," *see* Government Mot. Summ. J. at 8, *Ala. Ass'n of Realtors v. U.S. Dept. of Health & Hum. Servs*., No.

2

1:20-cv-03377 (D.D.C. Dec. 21, 2020) – that the year-long moratorium is "chargeable to the government."

The Government's Petition merely repeats the dissent, without addressing the majority's thorough refutation of the dissent's analysis. Ultimately, the Government offers no reason for en banc rehearing other than its desire for a different result. This is not a valid basis for en banc rehearing. The Petition should be denied.

## ARGUMENT

## I.    THE PETITION DOES NOT ESTABLISH A BASIS FOR EN BANC REHEARING.

"Rehearing en banc is not favored and ordinarily will be allowed only if one of the criteria in [Federal Rule of Appellate Procedure] 40(b)(2)(A)-(D) is met." Fed. R. App. P. 40(c); *see also* Fed. Cir. R. 40(a)(1) ("[R]ehearing en banc is not favored."). This Court has granted rehearing en banc in cases of first impression, *see, e.g., Suprema, Inc. v. Int'l Trade Comm'n*, 796 F.3d 1338, 1344 (Fed. Cir. 2015) (en banc), or in response to an invitation from the Supreme Court to "set forth the law," *see, e.g., Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (per curiam). By contrast, mere disagreement with the panel's decision "is not a sufficient reason for en banc review." *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223, 1228 (Fed. Cir. 2015) (Moore, J., concurring in denial of rehearing en banc). As the majority opinion demonstrates, more than one hundred years of takings law support the majority's holding. That

3

the Government would prefer a different outcome, or hypothesizes that the Government may face "significant monetary liability" or "tenant-specific inquiries," are not cause for en banc rehearing.

## II.    THE CDC ORDER WAS AUTHORIZED WITHIN THE MEANING OF WELL-ESTABLISHED TAKINGS LAW.

As this Court explained in *Del-Rio*, in the takings context, a governmental action is "authorized" if the conduct is "chargeable to the government." *Del-Rio*, 146 F.3d at 1362-63.  An action is deemed authorized if government agents "act within the general scope of their duties, *i.e.*, if their actions are a 'natural consequence of Congressionally approved measures' or are pursuant to the 'good faith implementation of a Congressional Act." *Id.* at 1362 (internal citations omitted).  "Merely because a government agent's conduct is unlawful does not mean that it is unauthorized; a government official may act within his authority even if his conduct is later determined to have been contrary to law." *Id.*; *see also Ramirez de Arellano v. Weinberger*, 724 F.2d 143, 151 (D.C. Cir. 1983), *rev'd on other grounds*, 745 F.2d 150 (D.C. Cir. 1984) (en banc), v*acated on other grounds*, 471 U.S. 1113 (1985) ("It is well established that the mere fact that a government officer has acted illegally does not mean he has exceeded his authority for Tucker Act purposes, even though he is not 'authorized' to break the law.  If a taking occurs while he is acting within the normal scope of his duties . . . a Tucker Act remedy normally lies, unless

4

Congress has expressed a positive intent to prevent the taking or to exclude governmental liability.").

As the panel majority explained, this concept of "authorization" for takings purposes has been consistent for more than 100 years.  In *Great Falls*, for example, the Secretary of War took land for the construction of a dam outside of the area of a survey even though Congress had authorized the Secretary to take land only within the survey area.  Even though the taking was outside the area authorized by Congress, the Supreme Court held that a compensable taking had occurred because the Secretary took the land "for the purposes described in the act of Congress" and had "honestly and reasonably exercise[d] the discretion with which he was invested." *Id*. at 597.

Similarly, in *Eyherabide v. United States*, 345 F.2d 565 (Ct. Cl. 1965), the predecessor of this Court held that a compensable taking had occurred when military personnel warned occupants of private property adjacent to a gunnery range that they were trespassers on private property and dropped fuel tanks and other objects from aircraft near the home on the private property, causing the property's caretakers to move out and causing efforts to find replacement caretakers unsuccessful.  The private property had previously been leased to the government and was part of the gunnery range for four years.  The Court of Claim held that because military personnel "acted within the general scope of [their] duties" and because "no statute

5

or regulation forbade these activities," the actions were "authorized" even though "they may have been mistaken, imprudent, or wrongful." *Id*. at 606.

In *Del-Rio*, this Court held that the Bureau of Land Management prevented Del-Rio from making beneficial use of mineral leases by conditioning the grant of drilling permits on obtaining the permission of the Ute Indian Tribe, which permission the tribe denied. The BLM had conditioned the permits based on a misinterpretation of the Tribal Consent Act. This Court held that the BLM's action, although wrongful and not required by the Tribal Consent Act, was nonetheless "authorized" for purposes of takings law, because the officials who denied the drilling permits "were acting within the scope of their statutorily authorized duties. It was part of their job to interpret the statutes and regulations governing federal mineral leases, and there is no reason to suppose that their decision reflected anything but a good faith effort to apply the statutes and regulations as they understood them." *Del-Rio*, 146 F.3d at 1363.

Based on this longstanding case authority, the majority held that the CDC's eviction moratorium order was "authorized" for Tucker Act purposes because the CDC, a public health agency, was congressionally authorized by the Public Health Service Act ("PHSA") "to make and enforce such regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases . . . from one State or possession into any other State or possession," Order

6

at 17 (quoting 42 U.S.C. § 264(a)); because "evictions would increase the spread" of COVID-19, *id.*; and because "it determined that the eviction moratorium 'constitute[d] a reasonable necessary measure . . . to prevent the further spread of COVID-19 throughout the United States.'" *Id.* (quoting 85 Fed. Reg. at 55296). Additionally, the majority concluded that "the CDC issued the Order 'pursuant to the good faith implementation of' the PHSA." Order at 18 (quoting *Del-Rio*, 146 F.3d at 1362).

The majority then considered whether the CDC's order "contravened some explicit prohibition or positively expressed congressional intent" and concluded that it did not, noting that the order was widely known, of "vast national significance" at a "time of national distress," yet "not only did this all play out under Congress's watchful eye without eliciting any legislative pushback, Congress actually *extended* the Order by a month." Order at 19 (emphasis in original).

Contrary to the Government's assertion, the majority opinion hardly "work[s] a sea change" in the law. It follows directly from a long line of precedents. As the cases cited above demonstrate, the Government and the dissent are simply wrong that neither the Supreme Court nor this Court "has ever imposed takings liability where the agency acted beyond the scope of statutory authorization." Petition at 10.

As the majority opinion notes, in the cases cited by the dissent, "the alleged taking contravened an explicit prohibition or other positively expressed

7

congressional intent." Order at 22. "In each of these cases, Congress had provided some explicit indication that the alleged taking was not authorized. As we have explained, those circumstances are not present in this case; if anything, the circumstances here are the opposite." Order at 24.

The Government's (and dissent's) attempt to characterize *Del-Rio* as "involv[ing] government officials who had statutory authority to engage in the relevant conduct" is without merit. It is true that the BLM officials had "statutory authority to engage in . . . administering the permitting process." Petition at 10. But that is beside the point. The BLM did *not* have the statutory authority to *deny* the permits based on the tribe's wishes. It was the denial of the permits, not the general act of permitting, that gave rise to the Tucker Act claim. This Court held that the denial of the permits, which was *not* authorized by statute, was nonetheless "authorized" for takings law purposes. Just as the BLM was authorized by statute to "administer[] the permitting process," the CDC was authorized by statute "to make and enforce such regulations *as in [its] judgment* are necessary to prevent the introduction, transmission, or spread of communicable diseases." Order at 17 (quoting 42 U.S.C. § 264(a)) (emphasis added). Indeed, the Government argued in courts across the country for a year that the CDC's order was clearly authorized by the PHSA. In *Del-Rio*, the Court of Federal Claims determined that the Tribal Consent Act did not provide the BLM with a basis to deny the drilling permit; here,

8

the Supreme Court indicated that the PHSA did not provide the CDC with a basis to issue the moratorium.  The Government wholly fails to explain how the *Del-Rio* holding that the BLM's actions were "authorized" because they reflected "a good faith effort to apply the statutes and regulations as [it] understood them," *Del-Rio*, 146 F.3d at 1363, does not apply equally here.

Ultimately, as the majority pointed out, the view espoused by the Government leads to an absurd result: "that government agents can physically occupy private property for public use, resist for months the owner's legal attempts to make them leave, and then, when finally made to leave, say they need not pay for their stay because they had no business being there in the first place."  Opinion at 25.

The majority opinion fits squarely within takings jurisprudence reaching back to *Great Falls* in 1888 and is on all fours with this Court's holding in *Del-Rio*.  There is no basis for en banc rehearing.

## III.    THE MORATORIUM WAS A PER SE PHYSICAL TAKING.

The Government next devotes two-and-a-half pages of its Petition to arguing that the majority erred in holding that the CDC order was a physical taking.  This argument, too, is without merit.

The "right to exclude is 'one of the most treasured' rights of property ownership."  *Cedar Point*, 594 U.S. at 149 (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 485 U.S. 419, 435 (1982)).  Addressing the CDC order

9

specifically, the Supreme Court stated unequivocally that "preventing [property owners] from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude." *Alabama Ass'n of Realtors*, 594 U.S. at 765.

*Cedar Point* involved a state regulation that required employers to allow union organizers on their property for up to 3 hours a day and up to 120 days per year. The Supreme Court held that the regulation constituted a per se physical taking because "the regulation appropriates for the enjoyment of third parties the owners' right to exclude." *Cedar Point*, 594 U.S. at 149. The Supreme Court made clear that it did not matter that a regulation was at issue: "Government action that physically appropriates property is no less a physical taking because it arises from a regulation." *Id*. Likewise, the Court emphasized that a per se physical taking occurs "whether the government has physically taken property for itself or someone else—by whatever means—*or has instead restricted a property owner's ability to use his own property*." *Id*. (emphasis added); *see also Sheetz v. County of El Dorado*, 601 U.S. 267, 274 (2024) (a per se physical taking occurs if the government "interfere[s] with the owner's right to exclude others from it"). Additionally, the Court explained that whether a taking constitutes a physical taking does not depend upon duration: "a physical appropriation is a taking whether it is permanent or temporary." *Id*. at 153.

10

The majority correctly held that the eviction moratorium was a physical taking. The majority noted that, as in *Cedar Point*, "where, absent the regulation, the employers could have excluded the union organizers from their property," the property owners here, absent the CDC order, "could have evicted (or 'excluded' from their property)" persons who failed to pay rent. Order at 30. Noting that *Cedar Point* compelled a finding that the CDC order was a physical taking, the majority explained that, "at a fundamental level, we cannot reconcile how forcing property owners to occasionally let union organizers on their property infringes their right to exclude, while forcing them to house non-rent-paying tenants (by removing their ability to evict) would not." *Id*. at 31.

The Government, like the dissent, seeks to analogize the CDC order to the rent-control ordinance at issue in *Yee v. City of Escondido*, 503 U.S. 519 (1992). *Yee*, however, is inapt for a number of reasons.

First, *Yee* was a rent-control case. The owners of mobile home parks challenged a rent-control ordinance on the grounds that the existence of rent control allowed sellers of individual mobile homes to realize a price premium – an economic benefit that the park owners claimed should have inured to them in the form of higher rents. The Supreme Court held that the ordinance did not constitute a physical taking, noting that any rent control ordinance or zoning regulation involves a transfer

of wealth, but that "the existence of the transfer by itself does not convert regulation into physical invasion." *Yee*, 503 U.S. at 529 – 30.

*Yee* did not involve evictions at all. Indeed, the ordinance at issue specifically permitted park owners to evict tenants for nonpayment of rent. *Yee*, 503 U.S. at 524. The Government's assertion that *Yee* stands for the proposition that "[l]aws placing limits on landlord's power to evict tenants . . . have not been regarded as per se takings," Petition at 13, is simply not the case. In fact, the Supreme Court emphasized that its holding was limited to rent control and that "[a] different case would be presented were the statute, on its face or as applied, to compel a landowner to rent his property or to refrain in perpetuity from terminating a tenancy." *Yee*, 503 U.S. at 528. As the majority opinion pointed out, although the Supreme Court used "in perpetuity" in its example, it later made plain in *Cedar Point* that "a physical appropriation is a taking whether it is permanent or temporary." *Cedar Point*, 594 U.S. at 153.

Second, the Government's effort to portray the eviction moratorium as a regulation of the "landlord-tenant relationship" falls flat. Although the persons whom the property owners seek to evict may have once been "invited" tenants, their failure to pay rent means that they are no longer either invitees or tenants. The property owners sought to *evict* such persons, not to "invite" them to remain. A moratorium on evictions, therefore, is in no sense a traditional regulation of the

"landlord-tenant relationship." As the majority put it, "just because tenants (or other occupiers of property) were at one point 'invited' does not mean that their continued, government-compelled occupation cannot, under any circumstances, be treated as a physical taking." Opinion at 33.

Equally unavailing is the Government's characterization of the CDC order as a mere "delay" in evicting a non-rent-paying occupier of rental property. The moratorium was in place for *a year*. And, as the Supreme Court observed, "The moratorium has put the applicants, along with millions of landlords across the country, at risk of irreparable harm by depriving them of rent payments with no guarantee of eventual recovery." *Alabama Ass'n of Realtors*, 594 U.S. at 765.

Finally, the Government's argument runs afoul of Supreme Court precedent. As much as the Government seeks to portray the CDC order as a garden-variety regulation of the "landlord-tenant relationship" and therefore not a physical taking, it ignores the Supreme Court's clear statement about the CDC's eviction moratorium: "preventing [property owners] from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership— the right to exclude." *Alabama Ass'n of Realtors*, 594 U.S. at 765. It would be difficult to find a clearer statement that the CDC order constituted a physical taking.

The Government again fails to articulate a basis for en banc rehearing. Although it understandably wishes that the panel had reached a different conclusion,

13

the Government does not credibly point to any inconsistency between the majority opinion and well-established law or to any novel issues. The Government simply wants a do-over.

## CONCLUSION

The bases for en banc rehearing are extremely limited. The Government cannot identify any such basis. Instead, it merely wants another bite at the apple with the hope of a different outcome. That is not a reason to grant en banc rehearing. The majority opinion follows over a century of jurisprudence holding that actions taken by government officials acting in good faith to carry out their statutorily authorized duties are "authorized" for takings purposes even if it is later determined that they were wrong about their statutory authority. Similarly, the majority's holding that the CDC order was a per se physical taking is consistent with the Supreme Court's holdings in *Cedar Point*, *Sheetz*, and *Alabama Ass'n of Realtors*. The Government's observation that it could be held liable for significant damages has no bearing on the analysis; the Government is almost *always* at risk of "significant damages" in a Tucker Act case, and no case law suggests that economic consequences are a reason to grant en banc rehearing. Similarly, the specters of "intrusive inquiries into the subject intentions of government employees" and expansion of *Cedar Point* "to cover a range of cases where regulations delay property owners from removing people or chattel from their land" conjured by the

14

Government are both entirely speculative and not supported by any plausible reading of the majority opinion.  The Petition for Rehearing En Banc should be denied.

Dated:  April 11, 2025

Respectfully submitted,

/s/ Creighton R. Magid
Creighton R. Magid
DORSEY & WHITNEY LLP
1401 New York Avenue, N.W.
Suite 900
Washington, D.C.  20005
Telephone:  (202) 442-3555
Fax:  (202) 315-3852
magid.chip@dorsey.com

Shawn J. Larsen-Bright
DORSEY & WHITNEY LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
Telephone: (206) 903-2417
Fax:  (206) 903-8820
larsen.bright.shawn@dorsey.com

Attorneys for Appellants

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it has been prepared using a proportionally-spaced typeface, has a typeface of 14 points, and includes 3,428 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

Dated: April 11, 2025

/s/ Creighton R. Magid
Creighton R. Magid
DORSEY & WHITNEY LLP
1401 New York Avenue, N.W.
Suite 900
Washington, D.C. 20005
Telephone: (202) 442-3555
Fax: (202) 315-3852
magid.chip@dorsey.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 11th day of April, 2025, I electronically filed the foregoing CORRECTED RESPONSE TO PETITION FOR REHEARING EN BANC with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the CM/ECF system, which automatically served opposing counsel in this case.

<u>/s/ Creighton R. Magid</u>
Creighton R. Magid