NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DARBY DEVELOPMENT COMPANY, INC., ET AL.,**
*Plaintiffs-Appellants*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1929

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01621-AOB, Judge Armando O. Bonilla.

---

### ON PETITION FOR REHEARING EN BANC

---

CREIGHTON REID MAGID, Dorsey & Whitney LLP, Washington, DC, filed a response to the petition for plaintiffs-appellants. Also represented by SHAWN LARSEN-BRIGHT, Seattle, WA.

ADAM C. JED, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, filed a petition for rehearing en banc for defendant-appellee. Also represented by BRIAN M. BOYNTON, CATHERINE CARROLL, PATRICIA M. MCCARTHY, LOREN MISHA PREHEIM GERARD SINZDAK, NATHANAEL YALE.

Before MOORE, *Chief Judge*, LOURIE, DYK, PROST, REYNA, TARANTO, CHEN, STOLL, CUNNINGHAM, and STARK, *Circuit Judges*.[1]

CHEN, *Circuit Judge,* concurs with the denial of the petition for rehearing en banc.

DYK, *Circuit Judge,* with whom CUNNINGHAM, *Circuit Judge*, joins, dissents from the denial of the petition for rehearing en banc.

STARK, *Circuit Judge*, dissents from the denial of the petition for rehearing en banc.

PER CURIAM.

# ORDER

The United States filed a petition for rehearing en banc. A response to the petition was invited by the court and filed by Appellants. The petition was first referred as a petition to the panel that heard the appeal, and thereafter the petition was referred to the circuit judges who are in regular active service. The court conducted a poll on request, and the poll failed.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for panel rehearing is denied.

The petition for rehearing en banc is denied.

FOR THE COURT

June 6, 2025
Date

Jarrett B. Perlow
Clerk of Court

---

[1] Circuit Judge Newman and Circuit Judge Hughes did not participate.

# United States Court of Appeals for the Federal Circuit

---

**DARBY DEVELOPMENT COMPANY, INC., ET AL.,**
*Plaintiffs-Appellants*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1929

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01621-AOB, Judge Armando O. Bonilla.

---

CHEN, *Circuit Judge*, concurring with denial of the petition for rehearing en banc.

I concur with this court's decision to deny the petition for rehearing en banc. I write separately, however, to emphasize two points: (1) the majority faithfully interprets and applies our court's precedent and (2) the issue in this case, which goes to the scope of the Takings Clause, would benefit from Supreme Court guidance.

Both the majority and dissent correctly note that a plausible takings claim arises only where the government "authorized" the act in question. *See United States v. N. Am. Transportation & Trading Co.*, 253 U.S. 330, 333 (1920). But, as the conflict between the majority and dissent illustrates, "authorized" in this context can have two

reasonable meanings: (1) arising from actual legal authority (as the dissent believes) or instead, (2) arising from a good faith implementation of a Congressional Act or from within the scope of an agent's general duties (as the majority holds).

Our court has already chosen one of those approaches: "government agents have the requisite authorization if they act within the general scope of their duties, i.e., if their actions are a 'natural consequence of Congressionally approved measures,' or are pursuant to 'the good faith implementation of a Congressional Act.'" *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998) (citations omitted). That is, even if a government official's action is later determined to have been contrary to law, the relevant question for takings purposes is "whether the alleged invasion of property rights is chargeable to the government." *Id.* The majority's emphasis on the scope of an agent's duties, as well as an agent's good faith implementation, *see Darby Dev. Co., Inc. v. United States*, 112 F.4th 1017, 1024 (Fed. Cir. 2024), faithfully applies *Del-Rio*. *Del-Rio* (and accordingly, the majority's approach) also rests on what I believe to be the better understanding of the relevant Supreme Court precedent. *See id.* at 1024–27. I accordingly concur in the denial of rehearing en banc.

Nevertheless, this consequential question about the Takings Clause warrants Supreme Court guidance for a few reasons.

For one, even though I think the majority correctly decided this case, the dissent offers a reasonable interpretation of the Supreme Court's decisions. Only the Supreme Court can provide the needed clarity as to the meaning of "authorized" in its takings jurisprudence.

Moreover, this issue will almost certainly recur. Whether the government authorized the act-in-question is a threshold question for *all* takings claims, not merely a

subset of them. And despite our court's decision today, this question will continue to linger until the Supreme Court definitively resolves the matter.

Finally, not only does this case present an unresolved and consequential legal question, but it also is significant on its facts. The underlying CDC order affected millions of citizens and garnered significant attention, making it exceptionally high-profile.

In sum, while I concur with the denial of the petition for rehearing en banc, I believe our court and other lower courts would benefit from Supreme Court guidance on what type of government action counts as authorized action for takings purposes, and this case is an ideal vehicle to resolve that question.

# United States Court of Appeals for the Federal Circuit

---

**DARBY DEVELOPMENT COMPANY, INC., ET AL.,**
*Plaintiffs-Appellants*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1929

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01621-AOB, Judge Armando O. Bonilla.

---

DYK, *Circuit Judge*, with whom CUNNINGHAM, *Circuit Judge*, joins, dissenting from denial of petition for rehearing en banc.

This case presents the question whether the United States can be liable for the unauthorized acts of its officials under the Takings Clause. The panel majority's decision, in my view, is contrary to governing Supreme Court authority. I respectfully dissent from the order denying en banc rehearing with respect to this important question.

I

On September 4, 2020, the Centers for Disease Control and Prevention ("CDC") promulgated an agency order that temporarily halted residential evictions in the midst of the COVID-19 pandemic, relying on its authority under 42

U.S.C. § 264(a).  The Supreme Court held that it was "virtually certain . . . that the CDC ha[d] exceeded its authority" under that statute.  *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 759 (2021); *see also* Resp. to Pet. for En Banc Reh'g at 2, *Darby Dev. Co. v. United States,* 112 F.4th 1017 (Fed. Cir. 2024) (No. 22-1929) (conceding that "the Supreme Court ultimately expressed the view that the moratorium exceeded the CDC's statutory authority").  As a result, the eviction moratorium was enjoined.  *See Ala. Ass'n of Realtors*, 594 U.S. at 766.

Despite the lack of statutory authority, the panel majority held that the order was not unauthorized for takings purposes because it was done "within the normal scope of the agent's duties," *Darby Dev. Co., Inc. v. United States*, 112 F.4th 1017, 1027 (Fed. Cir. 2024), effectively importing the scope-of-duty standard from tort law into the takings context.[1]

## II

The panel majority's decision is contrary to more than 100 years of Supreme Court precedent that holds that a government agent's actions do not subject the government to takings liability unless they were made with actual authority under the statute:

- o  "[I]f property were seized or taken by officers of the government without authority of law . . . there could be no recovery."  *United States*

---

[1] *Compare id.* ("[A]n action by a government agent . . . will likely be deemed authorized for takings-claim purposes if it was done within the normal scope of the agent's duties."), *with* 28 U.S.C. § 1346(b)(1) (authorizing suit in tort for harm "caused by . . . any employee of the Government while acting within the scope of his office or employment").

> *v. Lynah*, 188 U.S. 445, 479 (1903) (Brown, J., concurring).

- o "The constitutional prohibition against taking private property for public use without just compensation is directed against the government, and not against individual or public officers proceeding without the authority of legislative enactment." *Hooe v. United States*, 218 U.S. 322, 335–36 (1910).

- o "[A] wrongful act[] [by an officer] cannot be held to be the act of the United States, and therefore affords no ground in any event for holding that the United States had taken the property for public use." *Hughes v. United States*, 230 U.S. 24, 35 (1913).

- o "In order that the government shall be liable it must appear that the officer who has physically taken possession of the property was duly authorized so to do, either directly by Congress or by the official upon whom Congress conferred the power." *United States v. N. Am. Transp. & Trading Co.*, 253 U.S. 330, 333 (1920).

- o "[A remand is required because it] very well may be that the claimants will be unable to establish authority on the part of those who did the acts to bind the Government by taking the land." *Portsmouth Harbor Land & Hotel Co. v. United States*, 260 U.S. 327, 330 (1922).

- o "In the absence of authority, even an intentional taking cannot support an action for compensation under the Tucker Act." *Mitchell v. United States*, 267 U.S. 341, 345 (1925).

- o "The distinction between property taken under authorization of Congress and property appropriated without such authority has long been

- recognized. Acts of government officials in taking property without authorization of Congress confer no right of recovery upon the injured citizen." *United States v. Goltra*, 312 U.S. 203, 208 (1941) (footnote omitted).

o "[T]he Government action must be authorized. 'The taking of private property by an officer of the United States for public use, without being authorized[] . . . to do so by some act of Congress, is not the act of the government,' and hence recovery is not available in the Court of Claims." *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 127 n.16 (1974) (quoting *Hooe*, 218 U.S. at 336).[2]

Commentators have also recognized the Supreme Court's adoption of this bright-line rule.[3] At least one

---

[2] The panel majority's reliance on *Great Falls Manufacturing Co. v. Garland*, 124 U.S. 581 (1888), is misplaced. *See Darby*, 112 F.4th at 1024. In *Great Falls*, the Supreme Court expressly found that the government had the authority to condemn the property in question. *See* 124 U.S. at 597 (explaining that the Secretary of War was "invested with large discretion in determining what land was actually required to accomplish . . . [condemnation of lands outside of Congress's prescribed] survey and map" and because the condemnation was undertaken "for the purposes indicated in the act of [C]ongress, whether it is embraced or described in said survey or map or not").

[3] *See, e.g.*, Daniel L. Siegel & Robert Meltz, *Temporary Takings: Settled Principles and Unresolved Questions*, 11 Vt. J. Env't L. 479, 500 (2010) ("The concept that acts of government officials must be authorized before they can violate the Takings Clause goes back at least to 1910."); Jed Michael Silversmith, *Takings, Torts and Turmoil: Reviewing the Authority Requirement of the Just Compensation*

appellate court has found that the panel majority's reasoning is contrary to traditional principles of takings liability as embodied in state law. *See D.A. Realestate Inv., LLC v. City of Norfolk*, 126 F.4th 309, 318 n.11 (4th Cir. 2025).

Given the historical understanding of takings claims as analogous to implied contracts,[4] it is also noteworthy that since at least 1868, the Supreme Court has routinely held that a government agent acting without actual authority cannot bind the government to contract liability. *See Gibbons v. United States*, 75 U.S. (8 Wall.) 269, 274 (1868) ("[T]his case is an attempt, under the assumption of an implied contract, to make the government responsible for the unauthorized acts of its officer, those acts being in themselves torts. No government has ever held itself liable to individuals for the misfeasance, laches, or unauthorized exercise of power by its officers and agents."); *see also The Floyd Acceptances*, 74 U.S. (7 Wall.) 666, 679–80, 682 (1868); *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990); *Schism v. United States*, 316 F.3d 1259, 1284 (Fed. Cir. 2002) (en banc) (holding that private parties cannot form "valid, binding contract[s]" with government officials who "lack[] actual authority").

As discussed in further detail in my original panel dissent, the panel's decision represents an abrupt departure from an unbroken line of cases in our court as well as the Supreme Court.

### III

The panel majority's importation of the scope-of-duty standard from tort law into the analysis under the Takings

---

*Clause*, 19 UCLA J. Env't L. & Pol'y 359, 371 (2002) ("After nearly one hundred years, the courts still apply this authorization requirement even if equitable considerations strongly favor the plaintiff.").

    4   *See N. Am. Transp.*, 253 U.S. at 335.

Clause cannot be squared with the historical understanding of the Takings Clause. We must interpret the scope of the Takings Clause against the backdrop of contemporaneous English practice at the time of ratification as to provisions that were "[d]erived from English practice and codified in" the Bill of Rights. *United States v. Rahimi*, 602 U.S. 680, 690 (2024).

As the Court noted in *Horne v. Department of Agriculture*, 576 U.S. 350 (2015), the principle that the government should be liable for appropriating private property "goes back [to] at least 800 years to Magna Carta, which specifically protected agricultural crops from uncompensated takings." *Id.* at 358 (citing Cl. 28 (1215), *in* W. McKechnie, Magna Carta, A Commentary on the Great Charter of King John 329 (2d ed. 1914)). English practice at the time of ratification demonstrates that unauthorized acts by the King's agents were not attributable to the Sovereign but instead gave rise to tort liability in the agents.

The seminal English case is *Entick v. Carrington* [1765] 95 ER 807, and it sheds important light on the original understanding of takings liability.[5] In *Entick*, the King's Chief Messenger and three other Messengers, acting on the orders of the Secretary of State for the Northern Department, entered into the home of John Entick, taking his personal belongings. *Id.* at 808. The court determined that the Messengers could be liable in tort to Mr. Entick, based

---

[5] *See Boyd v. United States*, 116 U.S. 616, 626 (1886) ("[*Entick*] is regarded as one of the permanent monuments of the British [C]onstitution[] and is quoted as such by the English authorities on that subject down to the present time."); *United States v. Jones*, 565 U.S. 400, 405 (2012) ("[*Entick* was] undoubtedly familiar to every American statesman at the time the Constitution was adopted . . . ." (internal quotation marks omitted) (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989)).

on its conclusion that the Messengers' actions were not authorized by statute, because they were not conservators or justices of the peace (the only officials with the authority to issue such warrants). *Id.* at 817. The case stands for the proposition, as understood close to ratification of the Fifth Amendment, that the proper remedy for a government agent's unauthorized actions, if at all, was personal tort liability, not redress by the Sovereign.

The panel majority's decision is not consistent with this historical understanding of the scope of takings liability.

IV

The panel majority's approach, moreover, conflating takings liability with tort liability, effectively rewrites the Federal Tort Claims Act ("FTCA"). Recognizing the authorization requirement for governmental liability, Congress expressly waived sovereign immunity for certain tortious conduct of government officers or employees in the FTCA and thereafter in the Westfall Act, 28 § 2679(d), immunized those officers and employees from personal tort liability when they acted within the scope of their employment. *See also Osborn v. Haley*, 549 U.S. 225, 238 (2007). But the discretionary function exception of the FTCA precludes recovery for "[a]ny claim based upon an act or omission of an employee of the Government, . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." 28 U.S.C. § 2680(a).

The Supreme Court has explained that "the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," and thus covers "only governmental actions and decisions based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (internal quotation marks and citations omitted)). If the claim in this case were brought under the FTCA, the CDC's

actions would clearly fall under this exception. *See Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

The panel majority has effectively applied the FTCA scope-of-duty standard to the takings context, *see Darby*, 112 F.4th at 1027 ("[W]e conclude that the CDC was acting within the normal scope of its duties when it issued the Order."), and at the same time subverted the limited waiver of sovereign immunity in the FTCA, as the discretionary function exception (or other exceptions) would bar relief under the FTCA here.

V

As a subordinate federal court, we cannot disregard Supreme Court precedent simply because the Court has not spoken to this issue in recent years—"once the [Supreme] Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312 (1994); *see also James v. City of Boise*, 577 U.S. 306, 307 (2016) ("[A]ny . . . state or federal court[] is bound by this Court's interpretation of federal law."); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents."); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, . . . the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

As discussed above, the Supreme Court has consistently held that government officials' unauthorized acts cannot subject the government to takings liability. In so doing, the Court has uniformly looked to whether the official actually possessed the requisite authority to carry out the challenged action, not whether that action was "within the scope" of that official's duties. This court is bound by this precedent and has failed in its obligation to follow this

precedent. The panel majority's opinion would work a sea change in the government's takings liability that is totally unmoored from the historical understanding of the Takings Clause and an unbroken line of Supreme Court precedent for more than 100 years.

This case is, undoubtedly, of substantial importance. As the government argued in its petition for en banc rehearing, "[i]f the panel decision were allowed to stand . . . the consequences would extend far beyond this category of cases. . . . It could make the United States vicariously liable for all sorts of conduct affecting property that the United States is not empowered to take." Pet. for En Banc Reh'g at 15, *Darby Dev. Co. v. United States,* 112 F.4th 1017 (Fed. Cir. 2024) (No. 22-1929). As noted in my original dissent, the panel majority opinion would "directly discourag[e] adoption of legitimate government programs because of the risk of takings liability in addition to injunctive and declaratory relief." *Darby*, 112 F.4th at 1038 (Dyk, J., dissenting).

I respectfully dissent from this court's denial of the government's petition for en banc rehearing.

# United States Court of Appeals for the Federal Circuit

---

**DARBY DEVELOPMENT COMPANY, INC., ET AL.,**
*Plaintiffs-Appellants*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1929

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01621-AOB, Judge Armando O. Bonilla.

---

STARK, *Circuit Judge*, dissenting from denial of petition for rehearing en banc.

As Judge Dyk observes: "This case is, undoubtedly, of substantial importance." Dyk Dissent at 9. I'm not sure anyone disagrees. The government argued in its petition that the importance of this case is a reason we should review it en banc, *see* Pet. at 3, and appellants did not respond that the case lacks sufficient importance, *see* Resp. at 3-4 (addressing other grounds argued by government); *see also* FED. R. APP. P. 40(b)(2)(D) (requiring petition for en banc review to state whether "proceeding involves one or more questions of exceptional importance"); FED. CIR. INTERNAL OPERATING PROCEDURE 13(2)(b) (stating en banc action may be appropriate based on "[i]nvolvement of a question of exceptional importance"). I believe the

2　　　　　　　　　　DARBY DEVELOPMENT COMPANY, INC. v. US

exceptional importance of the issues presented in this case warrants our collective consideration. Thus, I dissent from the denial of the government's petition.